**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| GREE, INC., | § | Case No.:2:19-cv-00310 |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| SUPERCELL OY, | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT

Plaintiff GREE, Inc. ("GREE") files this Complaint against Supercell Oy ("Supercell").

In this Complaint, GREE asserts U.S. Patent Nos. 10,076,708 ("the '708 Patent") and 10,413,832

("the '832 patent") against at least Supercell's "Boom Beach" and "Clash Royale" games.

GREE alleges as follows:

## PARTIES

1.      GREE is a corporation organized under the laws of Japan with a principal place of

business at 6-10-1, Roppongi, Roppongi Hills Mori Tower Minato-Ku, Tokyo, Japan.

2.      Supercell is a corporation organized under the laws of Finland, with a principal

place of business at Itämerenkatu 11-13, Helsinki, Uusimaa, 00180, Finland.

## JURISDICTION AND VENUE

3.      This action arises under the patent laws of the United States, Title 35 of the

United States Code.  Accordingly, this Court has jurisdiction over the subject matter of this

action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4.      This Court has personal jurisdiction over Supercell because it has, directly or

through agents and/or intermediaries, committed acts within Texas, including within this District, giving rise to this action and/or has established minimum contacts with Texas and this District such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

5.      Supercell regularly conducts business in Texas, including this District, and purposefully avails itself of the privileges of conducting business in Texas.  In particular, Supercell, directly and/or through its agents and/or intermediaries, makes, uses, imports, offers for sale, sells, and/or advertises its products and affiliated services in Texas, including this District.  Supercell has placed, and continues to place, infringing products into the stream of commerce, via an established distribution channel, with the knowledge and/or understanding that such products are sold in the United States including in Texas and specifically including this District.

6.      Alternatively, and/or in addition, this Court has jurisdiction over Supercell under Federal Rule of Civil Procedure 4(k)(2).  This action arises from actions of Supercell directed toward the United States, including (1) committing at least a portion of the infringing acts alleged herein and (2) regularly transacting business, soliciting business, and deriving revenue from the sale of goods and services, including infringing goods and services, to individuals in the United States.  Therefore, Supercell has purposefully availed itself of the benefits of the United States, including the Eastern District of Texas, and the exercise of jurisdiction over Supercell would not offend traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(c), as Supercell is not a resident of the United States.

## GREE AND THE ASSERTED PATENTS

8.      GREE is a global social media company that provides mobile content and

services, including games, entertainment, media, and advertising.

9.      Originally founded in 2004, GREE has long sought to develop and create innovative solutions in gaming and social networking.  GREE has sought to protect its investments in innovation by obtaining patent protection.  GREE currently holds patents covering various improvements in digital and gaming technology in countries throughout the world, including the United States.

10.     GREE is the owner by assignment of all right, title, and interest in and to the '708 patent entitled "Game Control Method, Game Server, and Program," which duly and legally issued on September 18, 2018.  A true and correct copy of the '708 patent is attached to this Complaint as Exhibit A.

11.     GREE is the owner by assignment of all right, title, and interest in and to the '832 patent entitled "Game Control Method, Game Server, and Program," which duly and legally issued at 12:00 a.m. Eastern Daylight Time on September 17, 2019.

12.     The '708 patent and the '832 patent (collectively, "the Patents-in-Suit") share a common specification.

13.     During Prosecution of the Application that led to the '708 Patent the Patent Office "agreed that these additional features [added via amendment filed on April 26, 2018], in combination with the remaining limitations of the independent claims, represent 'significantly more' than the abstract idea of inventory management."  Response Filed April 26, 2018.  Thus, the Examiner agreed that the independent claims "are directed to patent-eligible subject matter under 35 U.S.C. § 101."  *Id.*

14.     The claims of the Patents-in-Suit cannot be performed without a computer and are not directed toward fundamental economic practices, methods of organizing human activities, an

idea itself, or mathematical formulas.

15.     The Patents-in-Suit describe and claim innovative communication systems and methods for controlling computer-implemented battle games. '708 patent at col. 1:40-53.  The claims of the Patents-in-Suit are directed to methods carried out by a game control device that communicates with a plurality of communication terminals for providing a game to the communication terminals and to systems for carrying out that method.  The claims all recite elements that are tied to a special purpose device, e.g., a game control device for the specific application of controlling a game.

16.     The invention of the Patents-in-Suit addresses the shortcomings of prior approaches for playing computer-based games, such as how it is relatively "difficult to acquire a battle card or the like with a high rarity value." *Id.* at 1:43-44.  This problem leads the user to "end[] up with the impression that such an item cannot be acquired at all." *Id.* at 1:44-45.  Thus, the user "suffers a drastic loss of interest in the game." *Id.* at 1:45-46.  The claims of the Patents-in-Suit solve these problems.

17.      In particular, the claims of the Patents-in-Suit "provide[] a game control method, a game server, and a program that can increase the variations on methods for acquiring battle cards and the like." *Id.* at 1:48-50.  The solution of the claims of the Patents-in-Suit "increase[s] the predictability of the acquisition of a card or the like with a high rarity value or the like." *Id.* at 1:51-52.  Thus, the claims solve the aforementioned problems and "heighten [the user's] interest in the game." *Id.* at 1:52-53.

18.     The claims of the Patents-in-Suit are directed to a narrow area of application and thus do not pre-empt others from using the general concept of games or sharing activities using a computer implemented method.

19.     The claims of the Patents-in-Suit recite more than generic computer functionality and recite steps that are not purely conventional.

20.     The claims of the '708 patent recite at least the following elements which, either alone or as an ordered combination, are unconventional and unique, and are not well-known, routine, or conventional: "displaying, during the virtual game, a plurality of cells and acquirable item information that is received from a server over a communication line, the plurality of cells being displayed in the same size, wherein each of a plurality of items extracted from an item information table pertaining to a user is associated with each of the plurality of cells, the plurality of items being selected randomly only from items in the item information table, and at least one of the cells including a character which indicates a rarity value of an item associated with the at least one of the cells."

21.     The claims of the '832 patent recite at least the following elements which, either alone or as an ordered combination, are unconventional and unique, and are not well-known, routine, or conventional: "sending information to a user terminal for displaying, in a virtual game, a sheet comprising the plurality of cells and obtainable item information, the obtainable item information comprising at least one of (i) a total number of items for each item type, (ii) a number of obtained items and (iii) a number of un-obtained items," "receiving, in the virtual game, a selection request from the user terminal to select one cell among the plurality of cells," "sending information for differentiating, in the virtual game, a display of the one cell from another cell of the plurality of cells in the sheet, wherein the differentiating of the display of the one cell is done in response to the selection request to select the one cell," and "sending information for differentiating, in the virtual game, a display of the one cell from another cell of the plurality of cells in the sheet, wherein the differentiating of the display of the one cell is done

in response to the selection request to select the one cell."

22.     The claims of the Patents-in-Suit recite improvements over prior art and conventional gaming devices, systems, and methods represent meaningful limitations and/or inventive concepts.  Further, in view of these specific improvements, the inventions of the asserted claims, when such claims are viewed as a whole and in ordered combination, are not routine, well-understood, conventional, generic, existing, commonly used, well-known, previously known, or typical.

## GENERAL ALLEGATIONS

23.     Supercell makes, uses, sells, offers for sale, and/or imports into the United States gaming systems, software, or methods for controlling games, including Boom Beach and Clash Royale.

24.     Boom Beach and Clash Royale operate on computers and mobile devices, including those with iOS and Android operating systems.

25.     Supercell operates, places into service, or otherwise controls a plurality of servers worldwide, including in the United States, on which Supercell operates, and its customers and other users use, software related to Boom Beach and Clash Royale and on which Supercell stores user data associated with the product.

26.     Boom Beach and Clash Royale both have millions of registered users worldwide, including in the United States and Texas.

27.     On September 12, 2016, GREE sent a letter to Supercell informing Supercell of the Japanese Parent of the Patents-in-Suit, JP5925369.  Further, Supercell filed an action based on infringement of JP6276314, which is a divisional application of JP5925369.  That action was assigned case number H30(YO)22064 at the Tokyo District Court.  GREE filed its Complaint on May 25, 2018 and Supercell filed its Answer on June 13, 2018.  In view of this notice, Supercell

has either been aware of or willfully blind to the '708 patent since its issuance on September 18, 2018.  Supercell's infringement of the '708 patent since September 18, 2018 has been and continues to be willful.

28.     Supercell has had knowledge of the Patents-in-Suit since at least the filing date of this Complaint, and its continued infringement is willful.

29.     GREE's infringement allegations presented below are exemplary, and do not necessarily detail every manner in which Supercell's products infringe the Patents-in-Suit, nor do so for each product that infringes.  GREE will provide additional details in its infringement contentions.

## COUNT I—Infringement of the '708 Patent

30.     GREE re-alleges and incorporates by reference each and every allegation contained in the paragraphs above as if fully set forth herein.

31.     Supercell directly infringes at least claim 1 of the '708 patent, for example, by, without authority, making, using, importing, selling, or offering to sell Boom Beach in the United States, in violation of 35 U.S.C. § 271(a).  For example, claim 1 of the '708 patent recites:

> 1. [preamble] game control method composing the steps of:
>
> (a) initializing a virtual game;
>
> (b) displaying, during the virtual game, a plurality of cells and acquirable item information that is received from a server over a communication line, the plurality of cells being displayed in the same size, wherein each of a plurality of items extracted from an item information table pertaining to a user is associated with each of the plurality of cells, the plurality of items being selected randomly only from items in the item information table, and at least one of the cells including a character which indicates a rarity value of an item associated with the at least one of the cells;
>
> (c) receiving, during the virtual game, a selection request selecting one of the plurality of cells and sending the selection request to the server; and
>
> (d) displaying, during the virtual game, an item associated with the selected

cell, which is determined by the server based on the selection request.

32.     For example, and by way of exemplary illustration, Supercell's Boom Beach game infringes as follows.  To the extent the preamble is found to be limiting, Boom Beach satisfies the preamble of claim 1 because Supercell manages servers that control Boom Beach. *See, e.g.* https://aws.amazon.com/solutions/case-studies/supercell/.  The Boom Beach application allows users to:

> - Play with millions of other players, raid hundreds of enemy bases for loot
> - Battle for control of precious resources to upgrade your base against enemy attacks
> - Explore a huge tropical archipelago and discover the mysterious power of the Life Crystals
> - Face fearsome Blackguard Bosses and uncover their evil plans
> - Join other players to form an unstoppable Task Force to take on co-op missions

https://apps.apple.com/app/reef/id672150402; *see also*

https://boombeach.com/articles/news/blog/from-the-devs-desk.html.

33.     Boom Beach infringes element 1(a) and element 1(b) because Supercell initializes a virtual game and displays in the virtual game a plurality of cells and acquirable item information (e.g., "Life Fragment," "Gold," or "Stone") that is received from a server over a communication line (e.g., the Internet).  As shown below, the plurality of cells are displayed in the same size.



34.    Boom Beach further infringes element 1(b) because each of a plurality of items extracted from an item information table pertaining to a user is associated with each of the plurality of cells.  For example, the rewards displayed in the "daily reward" screen are retrieved from predetermined rewards according to the user's class, e.g., as shown below, a user with a higher rank may "access more Intel, Trader Tickets, better Supply Chests and Daily Rewards."





35.     Boom Beach further infringes element 1(b) because, on information and belief, the plurality of items are selected randomly from items in the item information table, and at least one of the cells including a character which indicates a rarity value (e.g., a "fragment," as shown below or a "shard" or "crystal") of an item associated with the at least one of the cells. *See, e.g.*, https://boombeach.fandom.com/wiki/Power_Stone; *see also* https://supercell.helpshift.com/a/boom-beach/?l=en&p=web&s=sculptor-power-stones&f=power-stone-chance---how-does-it-work ("There's a chance that you will find Power Stones any time you attack an island. Fragments are the most common stone you will find Shards are a bit more rare, and Crystals are the most uncommon.  Your chance of finding Power Stones in an opponent's Headquarters are 25%, and 2% for all other buildings. The

chances do not accumulate; as they are calculated separately for each building. Having a Power

Stone Chance Statue will increase your chances, however it makes no guarantees. For example:

if you have a +100% Power Stone Chance Statue, your chances rise to 50% and 4% (instead of

25% and 2%).").



36.     Boom Beach infringes element 1(c) because the user can enter, during the

virtual game, a selection request selecting one of the plurality of cells and sending the selection

request to the server.  For example, in the "daily reward" screen, each of the icons "select this"

is displayed in each cells for the rewards.  It is possible to select the reward by selecting the

icon "select this" associated with the reward to be selected.



37.     Boom Beach infringes element 1(d) because the game displays an item associated with the selected cell, which is determined by the server based on the selection request.   For example, as shown below, when the icon "select this" corresponding to "stone" is selected in the "daily reward" screen, the amount of stone in the stone gauge changes from 108,724 (before selection) to 111,724 (after selection).



- 12 -

38.     Supercell indirectly infringes the claims of the '708 patent within the United States by inducing infringement under 35 U.S.C. § 271(b).  For example, since learning of the '708 patent and by failing to cease offering Boom Beach, Supercell has knowingly and intentionally induced users of Boom Beach to directly infringe one or more claims of the '708 patent, *inter alia*, by (1) providing instructions or information, for example on publicly available websites (*see, e.g*., https://supercell.helpshift.com/a/boom-beach/?p=web and linked pages), to explain how to use the Boom Beach application in an infringing manner, including the use of the Boom Beach application in the manners described in the foregoing paragraphs, which are expressly incorporated herein, and (2) touting these infringing uses of Boom Beach in advertisements, including but not limited to those listed on or available from their websites and other mobile application marketplace websites.

39.     Supercell indirectly infringes the claims of the '708 patent by contributing to the direct infringement by end users under 35 U.S.C. § 271(c), for example, by providing Boom Beach, which, as evidenced by Supercell's websites and advertisements (*see, e.g*., https://supercell.helpshift.com/a/boom-beach/?p=web and linked pages), is especially made for use in a manner that infringes one or more claims of the '708 patent as described herein and has no substantial non-infringing uses.

40.     GREE has been and continues to be injured by Supercell's infringement of the '708 patent.  GREE is entitled to recover damages adequate to compensate it for Supercell's infringing activities in an amount to be determined at trial, but in no event less than a reasonable royalty.

41.     Unless enjoined by this Court, Supercell's acts of infringement will continue to damage and cause irreparable harm to GREE.

42.     Supercell's infringement of the '708 patent has been willful and deliberate. Supercell has known of the '708 patent and its infringement thereof and continued its unlawful actions nevertheless.  GREE is therefore entitled to increased damages under 35 U.S.C. § 284 and attorneys' fees and costs under 35 U.S.C. § 285.

## COUNT II—Infringement of the '832 Patent

43.     GREE re-alleges and incorporates by reference each and every allegation contained in the paragraphs above as if fully set forth herein.

44.     Supercell directly infringes at least claim 1 of the '832 patent, for example, by, without authority, making, using, importing, selling, or offering to sell Clash Royale in the United States, in violation of 35 U.S.C. § 271(a).  For example, claim 1 of the '832 patent recites:

> 1. [preamble] A game control method executed by a game server, the method comprising:
>
> [a] associating, in a memory of the game server, each of a plurality of cells with each of extracted items extracted from the memory;
>
> [b] sending information to a user terminal for displaying, in a virtual game, a sheet comprising the plurality of cells and obtainable item information, the obtainable item information comprising at least one of (i) a total number of items for each item type, (ii) a number of obtained items and (iii) a number of un-obtained items;
>
> [c] receiving, in the virtual game, a selection request from the user terminal to select one cell among the plurality of cells;
>
> [d] sending information for differentiating, in the virtual game, a display of the one cell from another cell of the plurality of cells in the sheet, wherein the differentiating of the display of the one cell is done in response to the selection request to select the one cell; and
>
> [e] providing, in the virtual game, an item of the extracted items that is associated with the one cell to a user of the user terminal.

45.     For example, and by way of exemplary illustration, Supercell's Clash Royale game infringes as follows.  To the extent the preamble is found to be limiting, Clash Royale

satisfies the preamble of claim 1 because Supercell manages servers that control Clash Royale. *See, e.g.* https://aws.amazon.com/s`olutions/case-studies/supercell/.  The Clash Royale application allows users to "[d]uel players from around the world in real-time in both 1v1 and 2v2 Battles" using computers or mobile devices running iOS or Android processing systems. *See* https://itunes.apple.com/us/app/clashroyale/id1053012308?mt=8; *see also* https://clashroyale.com/blog/news/about-the-game.

46.     Clash Royale infringes element 1(a) because it associates, in a memory of a game server, each of a plurality of cells with each of extracted items extracted from memory. For example, as shown below in the screen "Select Card to Request", Cards arranged in cells of a sheet are displayed to the user in a selectable manner.  *See* https://www.youtube.com/watch?v=ytIjhjJOX_w



47.     Clash Royale infringes element 1(b) because it sends information to a user terminal for displaying, in a virtual game, a sheet comprising the plurality of cells and obtainable item information, the obtainable item information comprising at least one of (i) a

total number of items for each item type, (ii) a number of obtained items and (iii) a number of un-obtained items.  For example, as is shown in the figure above and below, in the screen "Select Card to Request", Cards arranged in cells of a sheet are displayed to the user in a selectable manner, and in this screen, at least (ii) a number of obtained items and (iii) a number of un-obtained items are displayed.



48.     Clash Royale infringes element 1(c) because it receives a selection request from the user terminal to select one cell among the plurality of cells.  For example, a user can select the cell to request a card associated with the cell.



49.     Clash Royale infringes element 1(d) because it sends information for differentiating, in the virtual game, a display of the one cell from another cell of the plurality of cells in the sheet, wherein the differentiating of the display of the one cell is done in response to the selection request to select the one cell.  For example, as shown below, the selected cell is differentiated by bordering it with a different color (e.g., blue).



50.    Clash Royale infringes element 1(e) because it provides, in the virtual game, an item of the extracted items that is associated with the one cell to a user of the user terminal. For example, when other user donates the card (that was requested from a requesting user), the card is provided to the requesting user.



51.     Supercell indirectly infringes the claims of the '832 patent within the United States by inducing infringement under 35 U.S.C. § 271(b).  For example, since learning of the '832 patent and by failing to cease offering Clash Royale, Supercell has knowingly and intentionally induced users of Clash Royale to directly infringe one or more claims of the '832 patent, *inter alia*, by (1) providing instructions or information, for example on publicly available websites (*see, e.g*., https://supercell.helpshift.com/a/clash-royale/?p=web&s=battle and linked pages), to explain how to use the Clash Royale application in an infringing manner, including the use of the Clash Royale application in the manners described in the foregoing paragraphs, which are expressly incorporated herein, and (2) touting these infringing uses of Clash Royale in advertisements, including but not limited to those listed on or available from their websites and other mobile application marketplace websites.

52.     Supercell indirectly infringes the claims of the '832 patent by contributing to the direct infringement by end users under 35 U.S.C. § 271(c), for example, by providing Clash Royale, which, as evidenced by Supercell's websites and advertisements (*see, e.g*., https://supercell.helpshift.com/a/clash-royale/?p=web&s=battle and linked pages), is especially made for use in a manner that infringes one or more claims of the '832 patent as described herein and has no substantial non-infringing uses.

53.     GREE has been and continues to be injured by Supercell's infringement of the '832 patent.  GREE is entitled to recover damages adequate to compensate it for Supercell's infringing activities in an amount to be determined at trial, but in no event less than a reasonable royalty.

54.     Unless enjoined by this Court, Supercell's acts of infringement will continue to damage and cause irreparable harm to GREE.

55.     Supercell's infringement of the '832 patent has been willful and deliberate. Supercell has known of the '832 patent and its infringement thereof and continued its unlawful actions nevertheless.  GREE is therefore entitled to increased damages under 35 U.S.C. § 284 and attorneys' fees and costs under 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, GREE prays for relief in its favor, as follows:

A.     Enter a judgment that Supercell has infringed the Patents-in-Suit;

B.     Grant a permanent injunction restraining and enjoining Supercell and its officers, directors, agents, servants, employees, successors, assigns, parents, subsidiaries, affiliated or related companies, and attorneys from directly or indirectly infringing the Patents-in-Suit;

C.     Enter a declaration that the case is exceptional and correspondingly award GREE attorney fees and costs under 35 U.S.C. § 285;

D.      Award damages, enhanced damages and prejudgment interest to GREE under 35

U.S.C. § 284;

E.      Grant such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

GREE hereby demands a jury trial on all issues appropriately triable by a jury.


DATED:  September 17, 2019                Respectfully submitted,

                                         GILLAM & SMITH, LLP


                                   By:   */s/ Harry L. Gillam, Jr.*
                                         MELISSA R. SMITH
                                         (Texas State Bar No. 24001351)
                                         HARRY L. GILLAM, JR.
                                         (Texas State Bar No. 07921800)
                                         303 South Washington Avenue
                                         Marshall, Texas  75670
                                         Telephone:  (903) 934-8450
                                         Facsimile:  (903) 934-9257
                                         Email:  melissa@gillamsmithlaw.com
                                         Email: gil@gillamsmithlaw.com

Of Counsel:                              KILPATRICK TOWNSEND & STOCKTON
                                         LLP
                                         STEVEN D. MOORE (CA Bar No. 290875)
                                         TAYLOR PFINGST (CA Bar No. 316516)
                                         Two Embarcadero Center, Suite 1900
                                         San Francisco, CA  94111
                                         Telephone:  415 576 0200
                                         Facsimile:   415 576 0300
                                         Email:  smoore@kilpatricktownsend.com
                                         Email:  tpfingst@kilpatricktownsend.com

                                         Attorneys for Plaintiff
                                         GREE, Inc.