**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| GREE INC., | § | |
| | § | |
| Plaintiff, | § | CASE NO.  2:19-cv-00310-JRG |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| SUPERCELL OY, | § | |
| | § | |
| Defendant. | § | |

**E-DISCOVERY ORDER**

The Court ORDERS as follows:

1.     This order supplements all other discovery rules and orders. It streamlines Electronically
Stored Information ("ESI") production to promote a "just, speedy, and inexpensive
determination" of this action, as required by Federal Rule of Civil Procedure 1.

2.     This order may be modified in the court's discretion or by agreement of the parties. The
parties shall jointly submit any proposed modifications within 30 days after the Federal
Rule of Civil Procedure 16 conference. If the parties cannot resolve their disagreements
regarding these modifications, the parties shall submit their competing proposals and a
summary of their dispute.

3.     A party's meaningful compliance with this Order and efforts to promote efficiency and
reduce costs will be considered in cost-shifting determinations.

4.     Absent a showing of good cause, general ESI production requests under Federal Rules of
Civil Procedure 34 and 45, or compliance with a mandatory disclosure requirement of
this Court, shall not include metadata. However, fields showing the date and time that the

document was sent and received, as well as the complete distribution list, shall generally be included in the production if such fields exist, and the preferred metadata fields identified in the attached Exhibit A, titled "Kilpatrick Townsend Specifications for the Production of ESI" shall be used to the extent this information is available and can be produced without substantial burden.

5.      Absent agreement of the parties or further order of this court, the following parameters shall apply to ESI production:

A.      **General Document Image Format**. Each electronic document shall be produced in black and white Group IV single-page Tagged Image File Format ("TIFF") format with the following exceptions: (1) documents for which color is critical to understanding the document (such as those containing images of marks and/or advertising) should be produced as single page color jpegs (.JPG); and (2) certain documents identified in D., below, may be produced in native format. If after reviewing any black and white document, a receiving party believes that color is critical to a document, the parties agree to engage in discussion regarding production of documents in color, which production will not be unreasonably withheld. TIFF files shall be single page and shall be named with a unique production number followed by the appropriate file extension. Load files in Concordance (.OPT) format shall be provided so as to facilitate the use of the produced images by a document management or litigation support system. The agreed-upon extracted, relevant metadata should be provided in a Concordance .DAT format, or other standard, compatible file format and extension as the receiving party specifies.  If a document is more than one page, the unitization of

the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

B. **Text-Searchable Documents**. No party has an obligation to make its production text-searchable; however, if a party's documents already exist in text-searchable format independent of this litigation, or are converted to text-searchable format for use in this litigation, including for use by the producing party's counsel, then such documents shall be produced in the same text-searchable format at no cost to the receiving party.

C. **Footer.** Each document image shall contain a footer with a sequentially ascending production number.

D. **Native Files.** Parties may produce agreed-upon ESI in native format, such as spreadsheets (e.g., excel, google sheets, OpenOffice, CSV, TSV, etc.) and other files that cannot be converted to TIFF (such as audio, video, XML files, and JPEGs).   Native files should contain the Bates number and confidentiality designation of the file in the file title.   In addition, native files should be accompanied by an image (TIFF) placeholder that contains the beginning Bates number and confidentiality designation.  Wherever feasible, the producing party shall include any agreed-upon accompanying metadata in the load file.   The Parties agree not to remove metadata from native production.   Additionally, if after reviewing production of other ESI in a non-native format, a Receiving Party believes that it is necessary to review a certain document or documents in native format, the parties agree to engage in discussion regarding production of discrete documents in native form, which production will not be unreasonably withheld.

E.      **No Backup Restoration Required.** Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to backup tapes, disks, SAN, and other forms of media, to comply with its discovery obligations in the present case.

F.      **Voicemail and Mobile Devices.** Absent a showing of good cause, voice-mails, text messages, PDAs and mobile phones are deemed not reasonably accessible and need not be collected and preserved.

G.      **Data Subject to EU Privacy Laws.**  The parties agree to make reasonable efforts to protect any data or information subject to the General Data Protection Regulation (GDPR), or other similar laws and regulations regarding data privacy and cross border data transfer, and agree that such data or information may be redacted in accordance with the GDPR, or other laws or regulations, to the extent reasonably practicable.  Nothing herein is meant to conflict with the requirements of the GDPR or impose any obligations that would conflict with protections afforded under the GDPR.

H.      **De-duplication.** The parties will use their best efforts to de-duplicate documents as necessary prior to producing them; meaning that, if agreed upon, exact duplicates of a document (*i.e.*, all duplicates having the same MD5 hash value as the original document) will be removed to the best of the producing party's ability from the entire population of documents to be produced.

I.      **Email Thread Analysis.**  Email thread analysis may be used to reduce the volume of emails reviewed and produced.  The produced emails must include all

of the responsive information from a thread, including attachments.  For example, if an email in a string deviates from the thread such that it contains attachments that are not included in the most complete thread, then that individual email and its attachments shall also be produced.

J.      **Parent-Child Relationships.**  Parent-child relationships (the association between an attachment and its parent Document) shall be preserved whenever reasonable in such a way that a Document and any attachments to that Document are produced in the same production set and are identifiable as parent and child.

K.      **Privilege Logs.**  Parties will provide a log of all documents withheld on the basis of privilege, work product protection, or other privilege.  For hard copy documents, each party shall create privilege logs using the standard privilege log. For electronic documents, each party may opt at its own discretion to create privilege logs using one of the following methods.

   **1.      Automated Log.**  An automated privilege log will be generated from the following metadata fields, to the extent they exist, as electronic metadata associated with the original electronic documents.

   **a.**  SUBJECT
   **b.**  FILE NAME
   **c.**  CUSTODIAN
   **d.**  AUTHOR
   **e.**  SENDER/FROM
   **f.**  RECIPIENTS/TO
   **g.**  CC
   **h.**  BCC
   **i.**  SENT DATE AND TIME
   **j.**  RECEIVED DATE AND TIME
   **k.**  FILE CREATED DATE AND TIME
   **l.**  FILE LAST MODIFIED DATE AND TIME
   **m.** PRIVILEGE TYPE
   **n.**  PRIVILEGE REASON (coded field)

**o.** ATTORNEYS (other attorneys (and legal staff) involved in the communication not indicated in metadata)
**p.** BEG BATES (for redacted documents)
**q.** END BATES (for redacted documents)

With respect to the SUBJECT OR FILENAME fields, the producing party may substitute a description of the communication where the content of these fields may reveal privileged information, but must indicate that the fields have been revised. The automated log should also include a field for PRIVILEGE REASON, which is a coded (not automated) field. The automated log should also include a field for ATTORNEYS that lists other attorneys (and legal staff) involved in the communication not indicated in metadata, which may be an automated or coded (not automated) field. Should the receiving party in good faith have reason to believe a particular entry on the Automated Log does not reflect a privileged document, it may request a Standard Log for that entry, to be produced within two weeks of the request, or within such other reasonable time as the parties may agree or the Court may order.

**2.**      **Standard Log.**   A standard privilege log will include these standard fields: author/sender/from; recipients/to; cc; bcc; custodian; date; privilege type; and a description sufficient to identify the subject of the document and the basis for the privilege assertion. The privilege log fields for email strings will contain the information from the top email in the email string. Parties shall also populate a field with all other attorneys (and legal staff) identified on the face of the document not already captured in the top email of the email string. Other attorneys (and legal staff) need only be identified for the email strings which are withheld as entirely privileged.

3.    **Litigation Documents.** Documents dated after September 12, 2016 (the date of the first demand letter from GREE's counsel to Supercell) containing privileged and/or work product material relating to the lawsuit do not need to be logged except as provided under P.R. 3-7 or to the extent that such communications involve patent prosecution counsel and relate to the prosecution of any patent-in-suit or related patent.

6.    General ESI production requests under Federal Rules of Civil Procedure 34 and 45, or compliance with a mandatory disclosure order of this court, shall not include e-mail or other forms of electronic correspondence (collectively "e-mail"). To obtain e-mail, parties must propound specific e-mail production requests.

7.    E-mail production requests shall be phased to occur timely after the parties have exchanged initial disclosures, a specific listing of likely e-mail custodians, a specific identification of the fifteen most significant listed e-mail custodians in view of the pleaded claims and defenses,[1] infringement contentions and accompanying documents pursuant to P.R. 3-1 and 3-2, invalidity contentions and accompanying documents pursuant to P.R. 3-3 and 3-4, and preliminary information relevant to damages. The exchange of this information shall occur at the time required under the Federal Rules of Civil Procedure, Local Rules, or by order of the court. Each requesting party may also propound up to five written discovery requests and take one deposition per producing party to identify the proper custodians, proper search terms, and proper time frame for e-mail production requests.  Such deposition will be phased to occur, if at all, only after the date which constitutes timely service of responses to any such written discovery requests,

---

[1] A "specific identification" requires a short description of why the custodian is believed to be significant.

and either party may seek a protective order seeking to prohibit such a deposition. The court may allow additional discovery upon a showing of good cause.

8.    E-mail production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms, and proper time frame. Each requesting party shall limit its e-mail production requests to a total of ten custodians per producing party for all such requests. The parties may jointly agree to modify this limit without the court's leave. The court shall consider contested requests for additional or fewer custodians per producing party, upon showing a distinct need based on the size, complexity, and issues of this specific case and the proportionality of the requested number of custodians thereto.

9.    Each requesting party shall limit its e-mail production requests to a total of ten search terms per custodian per party. The parties may jointly agree to modify this limit without the court's leave.  The court shall consider contested requests for additional or fewer search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (e.g., "and,"

"but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery.

10.   Pursuant to Federal Rule of Evidence 502(d), the inadvertent production of a privileged or work product protected ESI is not a waiver in the pending case or in any other federal or state proceeding.

11.   The mere production of ESI in a litigation as part of a mass production shall not itself constitute a waiver for any purpose.

12.   Except as expressly stated, nothing in this order affects the parties' discovery obligations under the Federal or Local Rules.

13.   This Order may be modified by a Stipulated Order of the parties, by agreement, or by the Court for good cause shown.

**So ORDERED and SIGNED this 20th day of February, 2020.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE