IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| GREE, INC., | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION NO. 2:19-CV-00310-JRG |
| SUPERCELL OY, | § § § | |
| *Defendant*. | § § | |

## MEMORANDUM ORDER

Before the Court is the Plaintiff GREE, Inc.'s Motion to Strike Opinions Based on Undisclosed Invalidity Opinions and Untimely Source Code Production. Dkt. No. 118. After consideration, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the Motion.

### I.   INTRODUCTION

On September 16, 2019, GREE filed a complaint against Defendant Supercell Oy alleging Supercell's Clash Royale product infringes U.S. Patent Nos. 10,076,708 (the "'708 Patent") and 10,413,832 (the "'832 Patent") (collectively, the "Asserted Patents"). (Dkt. No. 1). On April 7, 2020, Supercell served its Invalidity Contentions and Disclosures under Local Patent Rules 3-3 and 3-4. (Dkt. No. 118 at 2).

On August 18, 2020, Supercell served on GREE notices of subpoenas served on third party Zynga, Inc. ("Zynga") requesting source code for the Mafia Wars video game and Farmville video game. (Dkt. No. 133 at 7–8). Supercell gained access to and began reviewing the Zynga source code on October 19, 2020. (*Id.* at 3). On October 28, 2020, the last day of fact discovery, Supercell notified GREE that it intended to make source code printouts it received from Zynga available for

inspection. (*Id.*). On November 2, 2020, Supercell served its Invalidity Expert Report of Stacy Friedman (the "Friedman Report"). (*Id.*). On November 11, 2020, Supercell produced source code printouts for Farmville, but not Mafia Wars,[1] to GREE. (*Id.*). On November 24, 2020, Supercell served a supplemental Appendix E to the Friedman Report which included analysis of third-party Zynga's source code for its Farmville and Mafia Wars games. (Dkt. No. 118 at 3). On December 1, 2020, GREE took the deposition of Mr. Friedman. (Dkt. No. 118-1 at ¶3). On December 3, 2020, Supercell produced the source code printouts for Mafia Wars. (Dkt. No. 118 at 10).

GREE contends that the Freidman Report contains previously undisclosed invalidity opinions that were absent from Supercell's Invalidity Contentions and that Appendix E to the Friedman Report analyzes source code that Supercell did not disclose to GREE during fact discovery. (*Id.*). Accordingly, GREE now seeks to strike certain portions of the Friedman Report and Appendix E pursuant to Fed. R. Civ. P. 26 and 37. (*Id.* at 1).

## II.   LEGAL AUTHORITY

Local Patent Rule 3-3 requires a party opposing a claim of patent infringement to serve Invalidity Contentions, which must identify "each item of prior art that allegedly anticipates each asserted claim or renders it obvious." P.R. 3-3(a). Invalidity contentions are deemed to be final contentions absent proper amendment. *Finisar Corp. v. DirecTV Grp., Inc.*, 424 F. Supp. 2d 896, 899 (E.D. Tex. 2006).

Rule 26, which is reinforced by this Court's discovery order, requires production of all documents or tangible things that a party may use to support its claims or defenses. "If a party

---

[1] Supercell provided printouts for one page of Mafia Wars on November 11, 2020, but no others. (Dkt. No. 118 at 10 n.1).

fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). In assessing a violation, it is relevant for the court to consider: "(1) [the disclosing party's] explanation for its failure to disclose the evidence, (2) the importance of the evidence, (3) the potential prejudice to [the opposing party] in allowing the evidence, and (4) the availability of a continuance." *CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 280 (5th Cir. 2009). Supercell bears the burden to prove that its failure to comply with Rule 26 was "substantially justified or harmless." *Rembrandt Vision Techs. LP v. Johnson & Johnson Vision Care, Inc.*, 725 F.3d 1377, 1381 (Fed. Cir. 2013).

### III. ANALYSIS

#### 1. Undisclosed Invalidity Theories and References

GREE moves to strike invalidity theories in the Friedman Report that it contends were not disclosed in Supercell's Invalidity Contentions. First, GREE moves to strike Mr. Friedman's opinions that GREE's games Modern War and Crime City are invalidating prior art. (Dkt. No. 118 at 5–7).

In response, Supercell states that it will not assert that GREE's games Modern War and Crime City anticipate or render obvious the Asserted Patents. (Dkt. No. 133 at 1). Rather, Supercell contends that it will use these references to demonstrate the state of the art and to rebut GREE's assertion of secondary considerations of non-obviousness. (*Id.*). In light of this response, the parties agree that Mr. Friedman's opinions that GREE's games Modern War and Crime City anticipate or render obvious the Asserted Patents should be stricken. (Dkt. No. 141 at 1). Accordingly, to the extent that Mr. Friedman opines that GREE's games Modern War and Crime

3

City anticipate or render obvious the Asserted Patents in ¶¶ 163–65 is his report, those opinions are **STRICKEN**.

Second, GREE moves to strike Mr. Friedman's opinions that the Asserted Patents are not entitled to their priority dates in ¶¶ 185–201. (Dkt. No. 118 at 7–8). In response, Supercell withdrew the opinions in ¶¶ 185–201 of the Friedman Report. (Dkt. No. 133 at 1 n.1). Accordingly, ¶¶ 185–201 of the Friedman Report are **STRICKEN**.

Lastly, GREE seeks to strike portions of the Friedman Report that rely on features of the Farmville game or disclosures of the Farmville for Dummies book that it claims were not disclosed in Supercell's Invalidity Contentions. (Dkt. No. 118 at 8–9). GREE claims that Supercell included the "Market" feature, "Farmers Market" feature, "Friends Market" feature, and "Available Goods" feature in its Invalidity Contentions but none of the following features that now appear in the Friedman Report: the "Collections" feature; "Mystery Game" feature; "Pigpen" feature; "Customize My Farmer" feature; "Gifts" feature; "Mystery Box" feature; and the "Mystery Egg" feature. (*Id.* at 3). Accordingly, GREE seeks to strike citations to those features Mr. Friedman relies upon that were not disclosed in Supercell's Invalidity Contentions.

Supercell contends that Mr. Friedman is not relying on undisclosed prior art references or theories, but rather is providing additional examples to support Supercell's previously disclosed invalidity theories. (Dkt. No. 133 at 7–9). Supercell disclosed the Farmville for Dummies reference in its Invalidity Contentions and expressly reserved the right to rely on additional citations within that reference. (*Id.* at 7).

"The purpose of Patent Rule 3-3 is to place the Plaintiff on notice of potentially invalidating art that Defendants will assert in their case and at trial." *Realtime Data, LLC, v. Packeteer, Inc.*, No. 6:08-CV-144, 2009 WL 782062, *2 (E.D. Tex. Dec. 8, 2009). Supercell did so here. Supercell

4

disclosed the Farmville for Dummies reference and noted that it may rely on additional citations from those listed in its Invalidity Contentions. Mr. Friedman is allowed, as an expert, to provide additional details and examples for a previously disclosed invalidity theory relating to a prior disclosed reference like Farmville for Dummies. Accordingly, the Court finds that Mr. Friedman's use of additional features from the Farmville for Dummies reference to support Supercell's previously disclosed invalidity theories is permissible and should not be stricken.

### 2. Late Disclosed Source Code

GREE also moves to strike Appendix E to the Friedman Report because it analyzes source code for alleged prior art games not produced to GREE during fact discovery. (Dkt. No. 118 at 9–11). GREE claims that this is in violation of the Discovery Order in this case, which states that "[a] party who receives documents from a third party pursuant to a subpoena will reproduce those documents to the other party within five (5) business days." (Dkt. No. 32 at 8). Accordingly, GREE argues that Supercell failed to disclose the source code it received within this timeline and should not be allowed to rely on it pursuant to Fed. R. Civ. P. 37. (Dkt. No. 118 at 9–11). GREE argues that it will be prejudiced by the inclusion of this evidence because it claims it was forced to rebut Mr. Friedman's opinions without the benefit of the source code that Mr. Friedman used to form his opinions. (Dkt. No. 141 at 5).

Supercell argues that is disclosed the existence of the Zynga source code to GREE on October 28, 2020, only seven business days after it received access to the source code, and that in any event, it only was allowed access to this source code at Zynga's outside counsel's office on a Zynga source code computer. (Dkt. No. 133 at 10). Accordingly, Supercell argues that it did not have possession of "documents" required to be produced under the Discovery Order until it had printouts of the source code. (*Id.*). Furthermore, Supercell notes that Zynga did not clear

Mr. Friedman to have access to the source code printouts until November 10, 2020. (*Id.*). Once Mr. Friedman was given access to the source code, he supplemented his report with source code cites on November 24, 2020. (*Id.* at 10). Lastly, Supercell argues that GREE was not prejudiced by this late disclosure because GREE was given the source code printouts and filed its own supplemental report specifically addressing the Zynga source code. (*Id.* at 11).

The process Supercell used to notify and produce documents it received from Zynga to GREE was not perfect, but the Court finds that, at least in part, such failure was substantially justified or harmless. Supercell provided GREE with the source code printouts for Farmville on November 11, 2020. Although this production was late, considering the *CQ, Inc.* factors and given the third-party constraints on gathering source code printouts and production, the Court finds that this late production was substantially justified. *See* 565 F.3d at 280. GREE was able to analyze this source code and use it in its rebuttal expert report, as well as question Mr. Freidman regarding his opinions at his deposition on December 1, 2020. However, the late production of the Mafia Wars source code printouts on December 3, 2020, although alleged to be inadvertent, prejudiced GREE significantly by removing GREE's ability to both analyze the code prior to serving its rebuttal expert report and question Mr. Friedman regarding his opinions at his deposition. The Court finds that the prejudice to GREE is substantial, and considering the *CQ, Inc.* factors, the prejudice from the late production, whether or not inadvertent, should fall on the party responsible for it. Accordingly, the portions of Appendix E to the Friedman Report that discuss source code not disclosed by or before November 11, 2020, should be and hereby are **STRICKEN**. *See* 565 F.3d at 280.[2]

---

[2] However, if the Defendant contends that the prejudice to GREE can be remedied by a supplemental deposition of Mr. Friedman, it may raise the matter in a timely motion, after meeting and conferring, and the Court will address the matter at a pretrial conference.

### IV. CONCLUSION

In light of the foregoing, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** GREE's Motion to Strike Opinions Based on Undisclosed Invalidity Opinions and Untimely Source Code Production, as set forth herein. (Dkt. No. 118).

**SIGNED this 16th day of February, 2021.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE